Docket No. 100029.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MELISSA MOORE, as Independent Adm'r of the Estate of Ronyale White, Deceased, Appellee, v. CHRISTOPHER GREEN *et al.*,
    Appellants.

*Opinion filed April 20, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice McMorrow specially concurred, with opinion.

**OPINION**

The sole issue in this case is whether the absolute immunity provided by section 4–102 or 4–107 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/4–102, 4–107 (West 2002)) or the limited immunity provided by section 305 of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/305 (West 2002)) applies to claims that a municipality and two of its police officers were willful and wanton in failing to assist a victim of domestic violence. Like the appellate court (355 Ill. App. 3d 81), we conclude that the General Assembly intended section 305 to govern such claims. For the reasons that follow, we affirm.

BACKGROUND

On April 15, 2002, Ronyale White obtained an emergency order of protection against her husband, Louis Drexel. On May 3, 2002, White telephoned "911" at 11:40 p.m. to request police assistance because Drexel had entered her home. White told the operator that Drexel was violating the order of protection and that he owned a gun. The operator told White to watch for the police. An emergency dispatcher then contacted Chicago police officers Christopher Green and Donald Cornelius in their beat car. After the dispatcher advised the officers of White's situation and gave them her address and Drexel's description, one of the officers responded "10-4." That call concluded at 11:43 p.m. Witnesses saw the officers arrive and wait briefly in their car at White's home, then depart without assisting her. Five minutes later, Drexel shot and killed White.

Melissa Moore, independent executor of White's estate, filed a complaint in the circuit court of Cook County against Officer Green, Officer Cornelius, and the City of Chicago under the Wrongful Death Act (740 ILCS 180/1 (West 2002)) and the Survival Act (755 ILCS 5/27–6 (West 2002)).[1] Moore alleged that White was a protected person under the Domestic Violence Act, and that the officers had a duty under the statute to use all reasonable means to prevent further abuse or

_____

[1]Initially, Moore's complaint also presented claims against other defendants, including 911 operators and the emergency dispatcher. She subsequently dismissed those claims and amended her complaint.

harassment by transporting White away from Drexel or arresting him. Moore charged that the officers' willful and wanton conduct in failing to investigate and assist White breached this duty and proximately caused her death.

The City filed a motion to dismiss Moore's complaint (see 735 ILCS 5/2–619(a)(9) (West 2002)), arguing that section 4–102 of the Tort Immunity Act, which provides absolute immunity for failing to provide police protection, to prevent or solve crimes, or to identify and apprehend criminals, and section 4–107 of that Act, which provides absolute immunity for failing to make an arrest, barred Moore's claims. Green and Cornelius joined this motion. Moore responded that section 305 of the Domestic Violence Act, which provides limited immunity for failing to render emergency assistance or enforce the statute and contains an exception for willful and wanton conduct, trumped sections 4–102 and 4–107. The trial court denied the defendants' motion to dismiss. The City filed a motion to reconsider and alternatively to allow an interlocutory appeal of a certified question under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). Green and Cornelius again joined this motion. The trial court denied the motion to reconsider, but concluded that there was substantial ground for disagreement on the immunity question raised by the defendants and that an immediate appeal could terminate the case. The trial court submitted this issue to the appellate court:

> "Does Section 4–102 or 4–107 of the Local Government and Governmental Employees Tort Immunity Act provide absolute immunity to a municipality and its police officers who are alleged to have willfully and wantonly failed to prevent a crime against a protected person by their actions or inactions (as specified in [Moore's amended complaint]) under Section[s] 201 and 305 of the Illinois Domestic Violence Act of 1986?"

The appellate court granted leave to appeal and answered the certified question in the negative. 355 Ill. App. 3d 81. The appellate reviewed the parties arguments, then reviewed this court's opinion in *Calloway v. Kinkelaar*, 168 Ill. 2d 312 (1995). 355 Ill. App. 3d at 86-87. In enacting the Domestic Violence

Act, the General Assembly sought "to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse." 355 Ill. App. 3d at 91. The appellate court continued: "Based on the strongly worded purposes of the Act, coupled with the supreme court's construction of section 305 in *Calloway*, we believe that, in enacting the Domestic Violence Act, the legislature carved out a separate sphere of duties and liabilities for law enforcement officials." 355 Ill. App. 3d at 92. The appellate court rejected the defendants' argument that the legislature did not intend the Domestic Violence Act to override the Tort Immunity Act because section 2–101 of the Tort Immunity Act exempts claims under certain enumerated statutes, and the Domestic Violence Act is not one of those statutes. 355 Ill. App. 3d at 92, citing 745 ILCS 10/2–101 (West 2002). According to the appellate court, section 2–101 of the Tort Immunity Act does not provide an exhaustive list of exemptions, and the "the strongly worded language of the legislature in enacting the Domestic Violence Act" cannot be ignored. 355 Ill. App. 3d at 92.

We allowed the defendants' petition for leave to appeal. 177 Ill. 2d R. 315(a). We allowed the Illinois Municipal League to file an *amicus curiae* brief in support of the defendants and the Illinois Coalition Against Domestic Violence, the Chicago Metropolitan Women's Network, and various other domestic violence service organizations to file an *amicus* brief in support of Moore. 155 Ill. 2d R. 345. On the legal issue presented in this appeal, our review is *de novo*. See *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 266 (2003).

ANALYSIS

The Illinois Constitution of 1970 abolished sovereign immunity, except as the General Assembly may provide (see Ill. Const. 1970, art. XIII, §4), and the legislature exercised this prerogative by retaining the Local Governmental and Governmental Employees Tort Immunity Act. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1–101.1(a) (West 2002); *Bubb v.*

*Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). The Act grants only immunities and defenses. 745 ILCS 10/1–101.1(a) (West 1998). That is, it does not create duties, but merely enumerates immunities which apply to certain government operations. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 381 (1997). Whether a municipality and its employees owed a duty of care to the plaintiff and whether they enjoyed immunity from the plaintiff's subsequent tort claims are separate inquiries. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996).

Here, the parties agree that there was a duty to protect White, stemming from the Domestic Violence Act. See 750 ILCS 60/304 (West 2002); see also *Calloway*, 168 Ill. 2d at 324. In fact, by filing a motion to dismiss under section 2–619, the defendants admitted the legal sufficiency of Moore's tort claims. See 735 ILCS 5/2–619(a)(9) (West 2002) (involuntary dismissal is proper where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim"); see also *Van Meter*, 207 Ill. 2d at 367, citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Once we have determined that a duty exists, we must then determine whether an immunity applies. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001).

Section 4–102 of the Tort Immunity Act provides:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4–102 (West 2002).

Section 4–107 provides that "[n]either a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest ***." 745 ILCS 10/4–107 (West 2002). Both sections offer absolute immunity (*Barnes v. Chicago Housing Authority*, 326 Ill. App. 3d 710, 720 (2001); *Hernandez v. Kirksey*, 306 Ill. App. 3d 912, 917 (1999)), and both sections

apparently apply to Moore's claims. In a typical case, when the applicable provisions of the Tort Immunity Act provide absolute immunity, the plaintiff's claim is barred.

This is not a typical case, however, because the Domestic Violence Act also contains its own immunity provision. Section 305 of that Act provides, "Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful or wanton misconduct." 750 ILCS 60/305 (West 2002). This section, too, apparently applies to Moore's claims. We therefore must determine which immunity provision governs.

The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6 (2004). Our analysis begins with the statutory language, which remains the best indication of that intent. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004). The language must be afforded its plain, ordinary, popularly understood meaning. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). When the language is unambiguous, the statute must be applied as written without resorting to other aids of construction. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10 (2001).

However, when the plain language of one statute apparently conflicts with the plain language of another statute, we must resort to other means in determining the legislature's intent. Where two statutes conflict, we will attempt to construe them together, *in pari materia*, where such an interpretation is reasonable. See *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001); *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427 (1998). We presume the legislature would not enact a law that completely contradicts an existing law without expressly repealing it. See *In re Marriage of Lasky*, 176 Ill. 2d 75, 79 (1997). "For a later enactment to operate as a repeal by implication of an existing statute, there must be such a manifest and total repugnance that the two cannot stand together." *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275,

280 (1994). Legislative intent remains the paramount consideration: "Traditional rules of statutory construction are merely aids in determining legislative intent, and these rules must yield to such intent." *Paszkowski*, 213 Ill. 2d at 7. In this regard, we may properly consider the purpose of the statutes, the problems that they target, and the goals that they seek to achieve. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002), see *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990) ("Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other"). Where a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). Similarly, we will presume that the legislature intended the more recent statutory provision to control. *State v. Mikusch*, 138 Ill. 2d 242, 254 (1990).

The General Assembly adopted the Tort Immunity Act in 1965 after this court abolished the sovereign immunity of municipalities from tort claims in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959). *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 344 (1998). That Act included sections 4–102 and 4–107. More than 20 years later, the General Assembly approved the Domestic Violence Act, which states that it should be "liberally construed and applied to promote its underlying purposes." 750 ILCS 60/102 (West 2002). These purposes are, in part, to

> "(1) Recognize domestic violence as a serious crime against the individual and society which produces family disharmony in thousands of Illinois families, promotes a pattern of escalating violence which frequently culminates in intra-family homicide, and creates an emotional atmosphere that is not conducive to healthy childhood development;
>
> ***
>
> (3) Recognize that the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability, and

has not adequately acknowledged the criminal nature of domestic violence; that, although many laws have changed, in practice there is still widespread failure to appropriately protect and assist victims;

(4) Support the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse and, when necessary, reduce the abuser's access to the victim and address any related issues of child custody and economic support, so that victims are not trapped in abusive situations by fear of retaliation, loss of a child, financial dependence, or loss of accessible housing or services;

(5) Clarify the responsibilities and support the efforts of law enforcement officers to provide immediate, effective assistance and protection of victims of domestic violence, recognizing that law enforcement officers often become the secondary victims of domestic violence, as evidenced by the high rates of police injuries and deaths that occur in response to domestic violence calls; and

(6) Expand the civil and criminal remedies for victims of domestic violence; including, when necessary, the remedies which effect the physical separation of the parties to prevent further abuse." 750 ILCS 60/102 (West 2002).

The Act protects "any person abused by a family or household member," as well as children in the care of an abuse victim and persons who house an abuse victim. 750 ILCS 60/201(a) (West 2002). It then streamlines the procedures that victims of domestic violence must use to obtain orders of protection (see 750 ILCS 60/202 (West 2002)), and pushes petitions for orders of protection to the top of trial court dockets (see 750 ILCS 60/212 (West 2002) ("A petition for an order of protection shall be treated as an expedited proceeding"); accord 750 ILCS 60/213(b) (West 2002). The Act then details a broad panoply of remedies that orders of protection may contain, "in addition to other civil or criminal

remedies available" to the victim. 750 ILCS 60/214, 221 (West 2002).

Article III of the Domestic Violence Act–"LAW ENFORCEMENT RESPONSIBILITIES"–shifts focus from helping victims to obtain orders of protection to instructing law enforcement agencies and officers to enforce them. The Act provides that law enforcement officers may arrest, without warrants, persons who violate orders of protection. 750 ILCS 60/301 (West 2002). The Act further provides that law enforcement officers "shall immediately use all reasonable means to prevent further abuse" when they believe a person is a victim of domestic abuse, including, *inter alia,* (1) arresting the party committing the abuse; (2) seizing any weapons used by the party committing the abuse; (3) accompanying the victim to his or her residence to remove personal effects; (4) offering the victim information summarizing the relief available under the statute; (5) providing the victim with a referral to a social service agency; (6) advising the victim about seeking medical attention and preserving evidence against the person committing the abuse; and (7) transporting the victim to a medical facility or shelter, or to the trial court to obtain an emergency order of protection. 750 ILCS 60/304(a) (West 2002). The Act even lists duties for officers who investigate domestic violence calls, but do not initiate criminal proceedings against the party committing the abuse. 750 ILCS 60/304(b) (West 2002).

This court interpreted this statute in *Calloway*. There, a wife obtained a plenary order of protection against her husband after he physically and mentally abused her during their marriage. Several weeks later, the husband violated the order of protection by making threatening telephone calls to the wife at the restaurant where she worked. The husband threatened to kill himself and her father in front of the wife and their daughter. The wife then notified the sheriff's department; the sheriff drove to the husband's residence, briefly observed it, and drove away without further investigation. Shortly thereafter, the husband again violated the order of protection by making more threatening telephone calls to the wife at work. The wife again notified the sheriff's department, and a dispatcher

acknowledged that the department was aware of the order of protection. Within an hour, the husband entered the restaurant, abducted the wife at gunpoint, and forced her into his pickup truck. Nearly an hour later, State Police officers stopped the truck. The wife jumped out of the truck, and when the police approached it, they found the husband had shot and killed himself.

The wife filed a complaint against the county and the county sheriff, alleging that their willful and wanton or negligent conduct breached their duties to her under the Domestic Violence Act, proximately causing her extreme emotional distress and trauma. The defendants filed a motion to dismiss the complaint, contending that they were insulated from liability under the so-called "public duty doctrine," a common law immunity grounded in public policy under which a municipality and its law enforcement officers may be shielded from liability for failing to supply police protection. The trial court dismissed the complaint, and the appellate court affirmed the dismissal of the negligence claims, but reversed the dismissal of the willful and wanton conduct claims. The defendants appealed.

This court affirmed. *Calloway*, 168 Ill. 2d 312. Initially, we examined in detail the Domestic Violence Act, whose purposes include recognizing that domestic violence is a serious crime and recognizing that the legal system has failed to protect and assist domestic violence victims. *Calloway*, 168 Ill. 2d at 320, citing 750 ILCS 60/102(1), (3) (West 1992). We emphasized two additional purposes "of particular significance"–namely, helping victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing orders of protection, and expanding the civil and criminal remedies for victims. *Calloway*, 168 Ill. 2d at 320, citing 750 ILCS 60/102(4), (6) (West 1992).

We noted that to further these purposes section 304 of the Domestic Violence Act enumerates the responsibilities of law enforcement officers. *Calloway*, 168 Ill. 2d at 321-22, citing 750 ILCS 60/304(a) (West 1992). Section 305 of the Act limits law enforcement liability to willful and wanton conduct. *Calloway*, 168 Ill. 2d at 322, citing 750 ILCS 60/305 (West 2002). We explained that "this partial immunity *** is a direct expression of

legislative intent to reconcile the strongly worded purposes of the Act *** with the recognition that officers performing their legal duties should not be held civilly liable when their efforts to enforce the Act fall short, *unless* the conduct in question can be viewed as willful and wanton." (Emphasis in original.) *Calloway*, 168 Ill. 2d at 322. To give effect to the legislature's purposes and intent in enacting the statute, we recognized a right of action for civil damages, "provided that the injured party can establish that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by the willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused plaintiff's injuries." *Calloway*, 168 Ill. 2d at 324.

We then addressed the defendants' public duty doctrine argument:

> "We do not reach [the] defendants' arguments concerning *general principles of governmental tort immunity* because the Domestic Violence Act itself provides an express limitation of liability on the part of law enforcement officers and municipalities. Accordingly, we need look no further than the language and intent of the Act to ascertain whether and to what extent law enforcement officers in the performance of their statutory duties under the Act are immune from liability to plaintiffs injured by acts or omissions of such officers." (Emphasis added.) *Calloway*, 168 Ill. 2d at 327.

Notably, we mentioned "general principles" of tort immunity, not statutory provisions. But see *Calloway*, 168 Ill. 2d at 331 (Freeman, J., specially concurring) ("The 'affirmative matter' asserted to 'avoid[ ] *** or defea[ ]' Calloway's claims [citation] were principles of common law and statutory governmental immunity"); see also *Sneed v. Howell*, 306 Ill. App. 3d 1149, 1157 (1999) ("the Tort Immunity Act and the common law public-duty doctrine are not applicable in this case because the General Assembly enacted the Illinois Domestic Violence Act *** to deal with these issues").

˘11˘

The defendants sidestep *Calloway*. *Calloway* squarely held that the Domestic Violence Act implies a private right of action to enforce its provisions and therefore overcomes the common law public-duty immunity. But, maintain the defendants, *Calloway* did not address the issue here: whether sections 4–102 and 4–107 of the Tort Immunity Act insulate them from such liability. According to the defendants, there is no language in the Tort Immunity Act that exempts claims under the Domestic Violence Act. See 745 ILCS 10/2–101 (West 2002). In asserting that the Tort Immunity Act controls over conflicting statutes, the defendants rely upon our opinions in *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1999), *Tosado v. Miller*, 188 Ill. 2d 186 (1999), *Ferguson*, 202 Ill. 2d 304, and *Paszkowksi*, 213 Ill. 2d 1.

In *Tosado*, *Ferguson*, and *Paszkowski*, we decided the Tort Immunity Act limitations provision trumped Code of Civil Procedure limitations periods. Those cases involve dueling limitations provisions, not dueling immunity provisions. *Henrich* is more relevant.

In *Henrich*, a high school student had spine fusion surgery. The student's physician advised that he was permanently restricted from any contact sports in physical education class. The high school knew of this restriction, but less than a year after the surgery, a substitute instructor required the student to participate in a water basketball game during physical education class. The student was severely and permanently injured. He later filed a complaint alleging, *inter alia*, that the school district was willful and wanton. The district filed a motion to dismiss, arguing that it enjoyed absolute immunity under sections 3–108(a) and 3–109 of the Tort Immunity Act (745 ILCS 10/3–108(a), 3–109 (West 2002)). The student responded that the school district had only limited immunity under sections 24–24 and 34–84a of the School Code (105 ILCS 5/24–24, 34–84a (West 2002)). The School Code grants educators the same immunity enjoyed by parents; school districts vicariously share this immunity, which covers negligence claims, but not willful and wanton conduct claims. *Henrich*, 186 Ill. 2d at 388-89. The trial court agreed with the school district and dismissed the student's claims. The appellate court affirmed.

˘12˘

This court, in turn, affirmed, concluding that the Tort Immunity Act shielded the school district from liability. *Henrich*, 186 Ill. 2d at 395. Though the student argued that the specific provisions of the School Code prevailed over the general provisions of the Tort Immunity Act, that distinction was not dispositive: "[T]he plain language of section 3–108(a) of the Tort Immunity Act immunizes a local public entity's failure to supervise an activity on or the use of public property ***. The legislature could not have made its intent any plainer." *Henrich*, 186 Ill. 2d at 391. Further, construing the statutes together, we stated that each stood "in its own sphere." *Henrich*, 186 Ill. 2d at 392. The School Code immunity provision applies to both private and public schools; the Tort Immunity Act immunity provision applies only to public schools. *Henrich*, 186 Ill. 2d at 392. We reasoned that the legislature, therefore, intended to grant public schools and their employees greater protection than private schools and their employees. *Henrich*, 186 Ill. 2d at 392. See *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475 (2002) (holding that sections 24–24 and 34–84a of the School Code provided no immunity from the plaintiff's allegations that the school district failed to provide a student with safety equipment during physical education class, but that section 2–201 of the Tort Immunity Act did); see also *Albers v. Breen*, 346 Ill. App. 3d 799, 807 (2004) (holding that the good-faith exception in the Mental Health and Developmental Disabilities Confidentiality Act did not override the immunity provided by section 2–201).

According to the defendants, the immunity provisions here, like the immunity provisions in *Henrich*, can be harmonized because the Domestic Violence Act and the Tort Immunity Act are available to different entities. The Tort Immunity Act applies to only "local public entities and public employees" (745 ILCS 10/1–101.1 (West 2002)) and not "the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State" (745 ILCS 10/1–206 (West 2002)). The Domestic Violence Act confers immunity on any "law enforcement officer" (750 ILCS 60/305 (West 2002)). The defendants assert that section 4–102 or 4–107 extinguishes tort claims against municipalities and their law

enforcement officers pursuant to the Domestic Violence Act, and that the immunity provided in section 305 remains available to law enforcement officers who are outside the scope of the Tort Immunity Act, such as the Illinois State Police and police at various state universities. We disagree.

Section 305 and sections 4–102 and 4–107 cannot be harmonized because clearly the immunity provided by both statutes applies to Moore's allegations. Unlike the statutes in *Henrich*, the statutes here do not stand in their own spheres, but rather vie for the same sphere. In *Henrich*, we limited the immunity provided by the School Code to private schools and their employees, while we applied the immunity provided by the Tort Immunity Act to public schools and their employees. Such a dichotomy between municipal and nonmunicipal defendants is not reasonable in this case. It would pervert the broad purposes of the Domestic Violence Act to conclude that the immunity created by section 305 was intended to apply only to law enforcement agencies and agents beyond the Tort Immunity Act's shield, who are less likely to investigate domestic violence calls or to enforce the Act. The reading advanced by the defendants threatens to reduce the duties in the Domestic Violence Act to precatory admonitions. If the defendants are correct, the General Assembly in passing the Domestic Violence Act told municipal law enforcement agencies what to do, but confided that there would be few repercussions for failing to do so. We presume the legislature did not intend the Act to be rendered superfluous or vaguely advisory. See *Lieberman*, 201 Ill. 2d at 309; *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001).

*Henrich* is apposite in one regard, however. As the appellate court correctly noted, our singular concern in *Henrich*, as well as *Tosado*, *Ferguson*, and *Paszkowski*, was to ascertain and give effect to the legislature's intent. 355 Ill. App. 3d at 90-91, citing *Henrich*, 186 Ill. 2d at 386; see also *Ferguson*, 202 Ill. 2d at 312 (citing *Tosado*, 188 Ill. 2d at 198 (Freeman, C.J., specially concurring), and *Tosado*, 188 Ill. 2d at 199 (Heiple, J., specially concurring)); *Paszkowski*, 213 Ill. 2d at 13.

For all of their talk about invisible "fatal" rays and "emanations and penumbras" from the Domestic Violence Act,

the defendants miss the unmistakable legislative intent. As Moore and her *amici* note, and as we presciently stated in *Calloway*, 168 Ill. 2d at 327, we need look no farther than the language of the Domestic Violence Act to divine this intent. The structure of that Act reflects a comprehensive statutory scheme for reform of the legal system's historically inadequate response to domestic violence. The Domestic Violence Act, in effect, is an omnibus source for rules regarding such cases. It begins with a broad statement of its purposes (750 ILCS 60/102 (West 2002)) and a broad statement of the persons it protects (750 ILCS 60/201(a) (West 2002)). Most importantly for this case, it details the responsibilities of law enforcement officers. 750 ILCS 60/304 (West 2002). As we noted in *Calloway*, "[t]hese provisions reveal the General Assembly's intent to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse." *Calloway*, 168 Ill. 2d at 324. Section 305 clearly works in concert with section 304: section 304 creates duties; section 305 limits civil liability for law enforcement agencies and their officers who breach these duties by willful and wanton conduct.

This partial immunity is a direct expression of legislative intent. *Calloway*, 168 Ill. 2d at 322. It was crafted long after the legislature crafted sections 4–102 and 4–107 of the Tort Immunity Act, but its phrasing mirrors that of Tort Immunity Act provisions providing limited immunity. Compare 750 ILCS 60/305 (West 2002) ("Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful or wanton misconduct") with 745 ILCS 10/2–202 (West 2002) ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct"). Just as the legislature exercised its constitutional prerogative to provide immunity in the Tort Immunity Act, it did so in the Domestic Violence Act as well. The legislature's intent in this regard is inconsistent with absolute immunity for municipalities under section 4–102 or 4–107 of the Tort Immunity Act.

˘15˘

The defendants argue that "in cases like this one, where the plaintiff alleges that police officers failed altogether to render emergency assistance or to enforce the Domestic Violence Act, it is doubtful that section 305 is applicable at all, since it applies only to the provision of emergency assistance or the enforcement of the Domestic Violence Act." The defendants ignore the plain language of the section 305, which clearly applies to both acts and omissions in rendering emergency assistance or enforcing the statute. See 750 ILCS 60/305 (West 2002).

Finally, the defendants and their *amicus*, the Illinois Municipal League, express concern that if municipalities are not cloaked with absolute immunity, their coffers stand at great risk. They contend that the "strikingly broad" and "sweeping" duties imposed by the Domestic Violence Act, together with the tragic and sympathetic facts associated with domestic violence cases, lower the gates to a flood of potential litigation and potentially ruinous damage awards.

We agree with the appellate court that

> "this argument rings hollow in light of the stated purposes of the Domestic Violence Act, which are to recognize domestic violence as a serious crime against individuals and society, recognize that the legal system has ineffectively dealt with family violence in the past, and expand the civil and criminal remedies for victims of domestic violence. Further, a plaintiff seeking relief under the Act has a heavy burden to carry, as the supreme court made clear in *Calloway*[.]" 355 Ill. App. 3d at 92, citing *Calloway*, 168 Ill. 2d at 324.

The legislature chose to burden municipalities with the duty to enforce the Domestic Violence Act; it also chose to provide only limited immunity from tort claims associated with a breach of this duty. It is not within our authority to question the wisdom of these choices.

## CONCLUSION

For the reasons that we have stated, we affirm the decision of the appellate court.

JUSTICE McMORROW, specially concurring:

In this cause, decedent, Ronyale White, obtained an emergency order of protection against her husband. When her husband subsequently entered her home in violation of this protection order, decedent contacted "911" to report this violation and request police assistance. Although two Chicago police officers responded to the call, these officers inexplicably failed to enter decedent's home and drove away without investigating the call or assisting decedent. Within minutes of the officers' departure, decedent was shot and killed by her husband. Plaintiff's complaint alleged that defendants' willful and wanton conduct in failing to investigate decedent's 911 call and in failing to assist her in this matter resulted in decedent's death. I am in agreement with the majority's ultimate holding in this cause which allows plaintiff's complaint to proceed forward past the dismissal stage.

The majority arrives at this ultimate holding by reasoning that the provisions of the Domestic Violence Act mandate this result. I agree with the majority that the unmistakable intent of the General Assembly in enacting the Domestic Violence Act was to implement a comprehensive restructuring "of the legal system's historically inadequate response to domestic violence." Slip op. at 14. To that end, in section 304 of the Domestic Violence Act (750 ILCS 60/304 (West 2002)) the legislature set forth with specificity the duties and responsibilities of law enforcement officers when they are called to respond to incidents of domestic violence. The importance of law enforcement officers fulfilling these responsibilities and duties was underscored by the legislature in section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2002)), which provides that a law enforcement officer is liable for any act of omission or commission which is the result of willful and wanton misconduct. Thus, these provisions of the Domestic Violence Act underscore that law enforcement officials must be held accountable for their willful and wanton failures to enforce orders of protection, otherwise the legislature's purpose in enacting the Domestic Violence Act would be thwarted. Accordingly, I have no disagreement with

˘17˘

the majority's analysis with respect to the application of the Domestic Violence Act to this cause, and the ultimate result that plaintiff's complaint alleging deliberate misconduct on the part of defendants should not be dismissed at this preliminary stage.

I write separately, however, due to my disagreement with the majority's interpretation of sections 4–102 and 4–107 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4–102, 4–107 (West 2002)). Section 4–102 of the Tort Immunity Act provides:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4–102 (West 2002).

Similarly, section 4–107 of the Tort Immunity Act provides:

> "Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." 745 ILCS 10/4–107 (West 2002).

The majority finds that defendants in this action are absolutely immune from liability based upon sections 4–102 and 4–107 of the Tort Immunity Act. Therefore, absent the application in this case of the saving provision in section 305 of the Domestic Violence Act providing for the liability of defendants for willful and wanton misconduct, the majority would hold that plaintiff's complaint alleging intentional bad acts on the part of defendants–deliberate misconduct which allegedly proximately caused decedent's tragic death–is subject to dismissal because such intentional misconduct is completely immunized under these two provisions of the Tort Immunity Act. 745 ILCS 10/4–102, 4–107 (West 2002). It has long been my position that there "are strong reasons why the policies underlying grants of immunity for simple negligence should not be impliedly expanded to reach willful and wanton or intentional

˘18˘

misconduct." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 403 (1996) (McMorrow, J., dissenting).

In my dissenting opinion in *Barnett*, I explained that the public policy of granting immunity to government entities and/or government employees against claims of *negligent* conduct is animated by the rationale that significant expense and burdens are placed upon the government when negligence on the part of local public entities or officials carrying out their government duties results in injuries to the public and such negligence lawsuits "are permitted to flourish unchecked." *Barnett*, 171 Ill. 2d at 403-04 (McMorrow, J., dissenting). It was my view, however, that the "rationale underlying a grant of immunity for simple negligence is different in kind from any justification for immunizing tortious conduct that is intentionally harmful or willful and wanton," and if the legislature actually intended to completely shield all willful and wanton misconduct from liability, the immunity statute should positively and unequivocally state such an intention. *Barnett*, 171 Ill. 2d at 404 (McMorrow, J., dissenting).

Since *Barnett*, I have adhered to my belief that the policies supporting blanket immunity for simple negligence are distinguishable from any justification for shielding deliberate governmental misconduct from liability. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 213-14 (1997) (McMorrow, J., concurring in part and dissenting in part); *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 354 (1998) (McMorrow, J., concurring in part and dissenting in part); *Henrich v. Libertyville High School,* 186 Ill. 2d 381, 401-02 (1998) (McMorrow, J., dissenting); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 501-10 (2001) (McMorrow, J., concurring in part and dissenting in part); *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 488-90 (2002) (McMorrow, J., concurring in part and dissenting in part); *Desmet v. County of Rock Island*, No. 100261, slip op. at 20-23 (April 20, 2006) (McMorrow, J., dissenting). I remain steadfast in my conviction that deliberate acts of governmental misconduct are not shielded under the Tort Immunity Act by provisions which remain silent with respect to an express exemption for intentional harmful acts.

In the matter at bar, the majority interprets sections 4–102 and 4–107 of the Tort Immunity Act (745 ILCS 10/4–102 (West 2002)) as affording a local governmental entity and its employees "absolute immunity" and notes that "[i]n a typical case, when the applicable provisions of the Tort Immunity Act provide absolute immunity, the plaintiff's claim is barred." Slip op. at 5. In support of this proposition, the majority makes citation to two decisions from our appellate court. Prior to the majority opinion in the instant cause, and to the majority opinion in *Desmet v. County of Rock Island*, which was under advisement at the same time as the instant matter, this court had not interpreted sections 4–102 and 4–107 of the Tort Immunity Act as affording absolute immunity to governmental defendants.

Under the majority's analysis of these two provisions of the Tort Immunity Act, local government entities and/or their employees will be totally immune against liability for *all* injuries caused to citizens as a result of a "failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals" (745 ILCS 10/4–102 (West 2002)), even if a citizen is gravely injured or killed as a result of intentional and knowing misconduct on the part of defendants. The same is true of section 4–107 of the Tort Immunity Act: under the majority's analysis, a citizen is unable to successfully prosecute a suit against a governmental entity and/or employee for an injury "caused by the failure to make an arrest" (745 ILCS 10/4–107 (West 2002)), even if that injury directly results from intentional bad acts on the part of the government and/or government employee. The majority arrives at this result on the basis that neither section 4–102 nor section 4–107 contains an express exemption for willful and wanton misconduct. Even though the majority allows plaintiff's case to proceed forward under the specific facts presented in the cause at bar and withstand dismissal on the basis of the application of the Domestic Violence Act, this limited exception does not remedy the difficulties which arise as a result of the majority's holding. In the vast majority of other cases–many

which may be equally as serious but where the provisions of another statute such as the Domestic Violence Act do not apply to save a plaintiff's complaint–government entities and their employees will be completely insulated from liability for deliberate misconduct.

It is my view that absolute immunity should not shield from liability acts performed by local governmental entities or government officials in bad faith, especially where the provision of life-saving police protection services are involved. It has long been my position that it is not necessary to legislatively bestow absolute immunity upon governmental entities and/or governmental employees in order to protect public entities from liability arising from "the operation of government," which is the stated purpose of the Tort Immunity Act (745 ILCS 10/1–101.1 (West 2002)). Rather, it is my view that construing section 4–102 and section 4–107 of the Tort Immunity Act to immunize only negligent conduct would completely satisfy this legislative goal.

Accordingly, I respectfully dissent from the majority's conclusion that willful and wanton misconduct by a local public entity and/or employee is immunized from liability by the provisions contained within sections 4–102 and 4–107 of the Tort Immunity Act (745 ILCS 10/4–102, 4–107 (West 2002)). It remains my position that where the Tort Immunity Act is silent on the question of whether deliberate government misconduct is exempt from immunity, it should not be concluded that such silence equates with a positive intent on the part of the legislature to shield local governmental entities and their employees with unconditional and absolute immunity.