2016 IL App (1st) 151189
No. 1-15-1189
Opinion filed January 26, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the Circuit Court |
| ELISA SANCHEZ, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 14 D 80533 |
| v. | ) | 14 OP 76869 |
| | ) | |
| JUAN JOSE RAMIREZ TORRES, | ) | The Honorable |
| | ) | Lionel Jean-Baptiste, |
| Respondent-Appellee. | ) | Judge, presiding. |
| | ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    When the petitioner seeks a plenary order of protection and, after an evidentiary hearing, the trial court finds abuse, may the court decide instead to issue a civil restraining order, which is a less severe remedy? No. A civil restraining order carries neither the same rights nor gravitas conferred by an order of protection. Under the Illinois Domestic Violence Act of 1986 (Act), once the trial court finds respondent has committed an abuse against petitioner, it "shall issue" an order of protection. 750 ILCS 60/103(12), 214(a) (West 2012).

¶ 2 In this case before us, having found abuse, the trial judge had no authority to unilaterally enter a civil restraining order in lieu of the plenary order of protection. Accordingly, we reverse the trial court's order and remand for entry of a plenary order of protection.

¶ 3 BACKGROUND

¶ 4 In May 2014, after a 17-year relationship and four children, Elisa Sanchez told Juan Jose Rameriz Torres that she wanted to end their relationship. Soon after, Torres became abusive toward Sanchez, and, in November 2014, having been subjected to several incidents of various forms of abuse. Sanchez sought and obtained an emergency order of protection. The hearing on a permanent and plenary order of protection occupied two days, February 10 and March 26, 2015.

¶ 5 Sanchez testified she told Torres in early May 2014 that she wanted to leave him. Beginning at the end of the month and until early November, Sanchez described four occasions on which she said Torres engaged in multiple forms of abuse which included physical, verbal, sexual, and emotional abuse. She called the police to her home three times. The trial court admitted a number of photographs of bruises and injuries she sustained from Torres. In addition, Sanchez testified that Torrez repeatedly ignored a provision in the emergency order of protection requiring him to "stay away" from Sanchez "including but not limited to refraining from telephone calls, mail, e-mail, faxes, written notes, and communication through third parties."

¶ 6 At the second day of the hearing, Sanchez called her sister, Olga Sanchez Onofre, and then rested. Torres moved for a directed finding, which was denied. In ruling the trial court said, "I think that there is a *prima facie* case that is made, that there was some reason to be concerned by some of the examples that [Sanchez] had pointed out."

¶ 7 On the stand, Torres denied almost all Sanchez's and her sister's testimony and accused Sanchez of hitting him.

¶ 8       At the close of the hearing, the trial court framed the issue as "whether or not the dad has established a pattern of abusing mom and has committed some abuse, has established a pattern of abuse, and whether such abuses, if the Court would define that, constitute cause for fear that merits a plenary order of protection, a two-year order of protection that restricts dad's interaction with mom." The trial court then denied the plenary order of protection, entering a civil restraining order in its place "to help manage the relationship between mom and dad."

¶ 9       The trial judge marked a pre-printed form designated "Restraining Order" on the upper left side of the page. In the first paragraph, on the open space following "Motion for" is written "plenary order of protection." The form contains a list of potential findings and another list of potential orders. All the pre-printed findings were checked: (1) "Allegations of abuse have been made against the respondent"; (2) "The Court finds the allegations credible"; (3) "The entry of a Plenary Order of Protection may not be necessary at this time"; (4) "The Court deems it necessary to enter this order to prevent further abuse"; and (5) "This order is entered in lieu of an Illinois Domestic Violence Order of Protection."

¶ 10       In the order section of the form, the trial court checked only one the five boxes. The checked box states, "The respondent is prohibited from physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or stalking (as defined by the Act) the petitioner." Handwritten after "Other:" is a provision that requires Sanchez and Torres to communicate through the "Talking Parents" program and Torres to undergo alcohol and family counseling assessments. Next, in bold, is this statement: "Failure to comply with this order may result in a finding of contempt or the issuance of a Plenary Order of Protection." (The copy of the Restraining Order in the record lacks a Circuit Court form identification number.)

¶ 11       ANALYSIS

¶ 12    As a preliminary matter, Torres has not filed a response brief. Nevertheless, we will decide the merits of the appeal because the factual background is simple and the issues may be resolved without the aid of appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Also, we gratefully acknowledge the *amicus curiae* brief submitted by seven non-profit organizations with particular interest in domestic violence issues and law.

¶ 13                     Illinois Domestic Violence Act

¶ 14    Domestic violence happens every day in every community in our state. The victims are individuals from all backgrounds, ages, and cultures, irrespective of marital status, religion, race, ethnicity, education, gender, or sexual identity. The devastating and horrific effects of domestic violence on women, children, and families lead to the Act, a law that seeks to provide victims of domestic violence with the highest level of protection possible.

¶ 15    The Act begins with a directive that adopts a liberal construction of the Act "to promote its underlying purposes." 750 ILCS 60/102 (West 2012). These purposes include (i) accepting domestic violence as a serious public crime and not a private family matter; (ii) recognizing the extent to which domestic violence impairs families, creates intra-family conflict and violence, and harms the well-being and safety of children; (iii) acknowledging the legal system's failures to deal with family violence and to permit the perpetrators escape effective prosecution or financial liability; (iv) unmasking the criminal nature of domestic violence and the widespread failure to appropriately protect and assist victims; (v) preventing further abuse of domestic violence victims by promptly entering and diligently enforcing court orders; (vi) reducing the perpetrator's access to the victim; (vii) addressing child custody and economic support issues to protect victims and their children from adverse consequences that often befall them; (viii)

clarifying the role of law enforcement officers to quickly and effectively assist and protect victims often at their personal peril; and (ix) enlarging the civil and criminal remedies available for victims of domestic violence. *Id.*; see *Moore v. Green*, 219 Ill. 2d 470, 480-81 (2006).

¶ 16     Article II of the Act focuses on assisting victims of domestic violence obtain orders of protection and streamlining the procedures they must follow. *Moore*, 219 Ill. 2d at 481. Article III, "LAW ENFORCEMENT RESPONSIBILITIES," involves enforcement of orders of protection, including the arrest without warrants of persons who violate an order of protection. 750 ILCS 60/301 (West 2012). The Act provides that law enforcement officers "shall immediately use all reasonable means to prevent further abuse" when they believe a person is a victim of domestic abuse. This can involve (i) arresting the alleged perpetrator; (ii) seizing weapons used by the alleged perpetrator; (iii) accompanying the victim to his or her residence to remove personal effects; (iv) offering the victim information summarizing the relief available under the Act; (v) providing the victim with a referral to a social service agency; (vi) advising the victim on seeking medical attention and preserving evidence against the alleged perpetrator; and (vii) transporting the victim to a medical facility or shelter, or to the trial court to obtain an emergency order of protection. 750 ILCS 60/304(a) (West 2012); see *Moore v. Green*, 219 Ill. 2d 470, 481-82 (2006). The Act also lists duties for officers who investigate domestic violence calls but do not arrest or initiate criminal proceedings against the alleged perpetrator. *Moore*, 219 Ill. 2d at 482; 750 ILCS 60/304(b) (West 2012).

¶ 17     The three types of orders of protection are emergency, interim, or plenary. 750 ILCS 60/103(12), 217, 218, 219 (West 2012). Section 220 of the Act sets the duration of emergency orders at not less than 14 nor more than 21 days; interim orders for up to 30 days; and plenary orders for a fixed period of time, but not to exceed 2 years. 750 ILCS 60/220(a), (b) (West 2012).

¶ 18                              Trial Court's Findings of Abuse

¶ 19         In any proceeding to obtain an order of protection, the inquiry centers on whether the petitioner has been abused. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). "Abuse" under section 103(1) has been broadly defined as involving physical abuse, harassment, interference with personal liberty, or willful deprivation. 750 ILCS 60/103(1) (West 2012). Physical abuse "includes sexual abuse and means any of the following: (i) knowing or reckless use of physical force, confinement or restraint; (ii) knowing, repeated and unnecessary sleep deprivation; or (iii) knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(14) (West 2012).

¶ 20         The standard of proof for a finding of abuse under the Act is proof by a preponderance of the evidence. *Best*, 223 Ill. 2d at 348. This court may reverse the trial court's factual finding of abuse only where that finding was against the manifest weight of the evidence presented. *Id*. at 348-49. The Illinois Supreme Court in *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 323 (1995), recognized abuse victims as "a specially protected class of individuals to whom statutorily mandated duties are owed." The Act "expressly contemplates the expansion of civil and criminal remedies" for those protected persons. *Id*. at 324. And it seeks "to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse." *Id*.

¶ 21         Before the trial judge was a motion for a plenary order of protection. Sanchez had testified consistently about the events that preceded her petition, events which demonstrated escalating destructive behavior by Torres toward her. And though the trial court found all of the prerequisites for a plenary order had been established, a markedly different type of relief—a civil restraining order—was entered.

¶ 22    Under section 214(a) of the Act, once the trial court finds that the petitioner has been abused, "an order of protection *** shall issue." 750 ILCS 60/214(a) (West 2012). "[S]hall issue" is a mandatory term requiring the trial court to enter an order of protection, which carries with it rights for the protected party. Section 214(b) provides for no less than 19 possible remedies available to the trial court "in addition to other civil or criminal remedies available to petitioner." 750 ILCS 60/214(b) (West 2012). These remedies include: prohibiting abuse, neglect or exploitation; granting exclusive possession of a residence and/or personal property; forbidding damaging property ordering the respondent to stay away from the petitioner; requiring counseling, payment of support, or payment for shelter services; prohibiting owning a firearm; and granting injunctive relief to protect family members. Thus, the trial court has the ability to tailor an order of protection to address individual circumstances and needs, improve victim safety and hold the perpetrator accountable for his or her actions.

¶ 23    A violation of an order of protection order can incur criminal penalties, including immediate arrest without a warrant (720 ILCS 5/12-3.4 (West 2012); 725 ILCS 5/112A-26 (West 2012); 750 ILCS 60/301(a) (West 2012)). First time violations of orders of protection are class A misdemeanors; and, under certain circumstances, violations of orders of protection are class 4 felonies. See 720 ILCS 5/12-3.4(d) (West 2012). The Act also authorizes criminal, as well as civil, contempt proceedings. 725 ILCS 5/112A-23 (West 2012). Additionally, an order of protection carries automatic registration with the Law Enforcement Agencies Data System (LEADS), enabling law enforcement officers to verify the existence of an order of protection and make an arrest if probable cause exists to believe the order has been violated. And, as the *amicus* brief points out, an order of protection affords an accessible *pro se* process that victims can

navigate more easily and affordably. Also, as already discussed, law enforcement officers have expanded authority to prevent further abuse.

¶ 24     In contrast, a civil restraining order involves fewer and less effective remedies. Typically, a civil restraining order forbids the perpetrator from engaging in ordinary communication and association with specific persons. Section 501(a)(2) of the Illinois Marriage and Dissolution of Marriage Act requires a party seeking a temporary restraining order to present an affidavit showing a factual basis for relief. 750 ILCS 5/501(a)(2) (West 2012). The party must demonstrate that he or she: (1) possesses a certain and clearly ascertainable right that needs protection; (2) will suffer irreparable harm without the protection of the injunction; (3) has no adequate remedy at law; and (4) is likely to succeed on the merits of the case. *In re Marriage of Centioli*, 335 Ill. App. 3d 650, 654 (2002). And unlike an order of protection, a civil restraining order does not create a criminal record for the perpetrator or prohibit the perpetrator from lawfully possessing a firearm for purpose of employment.

¶ 25     A civil restraining order is simply no substitute for an order of protection. We hold that the Act mandates the issuance of an order of protection once the victim makes a showing of abuse. The trial court's finding of abuse was not against the manifest weight of the evidence; thus, under the Act it should have issued an order of protection. Accordingly, we reverse the trial court's denial of the order of protection and remand for entry of a plenary order of protection.

¶ 26     Finally, we consider it necessary to comment on a statement the trial court made directly to Sanchez at the end of the hearing. The trial court said she had to "respect that [Torres] loves you and he still likes you." For victims of domestic violence this statement may appear callous and insensitive to their pain and plight, though we quickly add that we do not believe the trial judge meant it to be so. Nevertheless, one questions why Sanchez should "respect that [Torres]

loves" her, particularly after he not only abused her, but also refused to accept any responsibility and blamed Sanchez for his own devastating actions.

¶ 27  Domestic violence is always alien to love; it humiliates, isolates, emotionally scars, demeans, and dehumanizes the victim, and frequently, children of the victim as well. Sanchez suffered abuse over a period of about six months before, at the prodding of the police, she finally sought court intervention to protect herself and her dignity. Sanchez asked for an order of protection; she proved her entitlement to an order of protection; and the trial court should have entered an order of protection. The Illinois Domestic Violence Act deals explicitly and boldly with an issue that, sadly, will never be cured, but can be addressed through advocacy, awareness, and activism.

¶ 28  We reverse and remand for entry of a two-year plenary order of protection.