2024 IL App (2d) 230008-U
No. 2-23-0008
Order filed July 24, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ERIC W. HENDRICKS, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-OP-1778 |
| | ) | |
| SCOTT A. BIESTEK, | ) | Honorable |
| | ) | David Christopher Lombardo, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1  *Held*: Trial court's denial of petition for a stalking no contact order was not against the manifest weight of the evidence.

¶ 2  This case concerns a dispute between two former neighbors, Eric Hendricks and Scott Biestek. Hendricks filed a petition for a stalking no contact order against Biestek in the circuit court of Lake County. The trial court denied Hendrick's petition. Hendricks appeals, *pro se*, from that order. We affirm.

¶ 3  According to his petition, on July 30, 2022, Hendricks moved into a Lake Barrington Shores townhome. That same day, he had a conversation about golf with his next-door neighbor,

Biestek. At the conclusion of their conversation, Biestek gazed at Hendricks intensely, which Hendricks considered to be "bird-dogging" and trolling.

¶ 4    One week later, on August 6, 2022, Hendricks again had a conversation with Biestek. Biestek approached him and complimented his home. Biestek mentioned a former female neighbor who had moved, and he implied that he had continued interaction with her. Biestek alluded that he had potential access to Hendricks' house, which caused Hendricks concern. One day after this conversation, Hendricks asked Biestek to leave him alone. Biestek indicated that he would.

¶ 5    On August 24, 2022, Hendricks was working out in his garage listening to loud music. Biestek went over to Hendricks house. Hendricks stated he would turn his music down. Hendricks later learned that Biestek had secretly made a video recording of him exercising in his garage. Hendricks asserted that as a veteran with post-traumatic stress disorder, this incident significantly increased his anxiety and affected his sleep patterns. Hendricks thereafter filed  a petition for a stalking no contact order.

¶ 6    On December 8, 2022, the trial court conducted a hearing on Hendricks' petition. Both Hendricks and Biestek testified regarding the three incidents at issue. Hendricks acknowledged that although the words Biestek used were friendly, his actions (staring and discussing the previous resident of his home) were not. As to the third incident, Biestek testified that he brought his phone with him so that he could call security should the need arise. He pointed his phone in the direction of Hendricks who was hitting a boxing dummy, and he took a picture of the security camera that Hendricks had installed.

¶ 7    At the close of Hendricks' case, the trial court granted Biestek's motion for a directed finding. The trial court found that the evidence was insufficient to warrant a stalking no contact

order. The trial court explained that the first incident involved nothing more than "neighborly behavior." As to the second incident, the trial court stated that "nothing in that conversation would normally lead someone to feel that they were being harassed or intimidated or threatened." With the third incident, the trial court found that the videotaping had caused Hendricks some anguish. However, as Hendricks had failed to establish that Biestek had committed two separate acts of surveillance, stalking, or anything of that nature, he had failed to meet the statutory requirements for a stalking no contact order.

¶ 8     Following the trial court's ruling, Hendricks filed a timely notice of appeal.

¶ 9     At the outset, we note that Biestek argues that this appeal is moot because Hendricks has moved away, and the parties no longer have any contact. An appeal is moot when "it presents or involves no actual controversy, interest or rights of the parties, or where the issues have ceased to exist." *Richardson v. Rock Island County Officers Election Board*, 179 Ill. 2d 252, 256 (1997). A moot appeal must be dismissed. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 21.

¶ 10    We decline to dismiss the appeal as moot. Hendricks' petition was directed against Biestek. It was not directed against Biestek at a certain location. Although the chances of Hendrick and Biestek having any interaction are now much more remote, we cannot say that those chances are so remote that any issues between the parties have now "ceased to exist." *Richardson*, 179 Ill. 2d at 256. We therefore address the merits of Hendricks' appeal.

¶ 11    On appeal, Hendricks argues that the trial court erred in dismissing his petition for a stalking no contact order because he established that Biestek engaged in a pattern of conduct that caused him to experience fear and emotional distress.

¶ 12    Recognizing that "[s]talking is a serious crime," the legislature passed the civil Stalking No Contact Act (Act) in 2010 to provide a remedy for victims who have safety fears or emotional distress as a result of stalking.  740 ILCS 21/5 (West 2022); Pub. Act 96-246 (eff. Jan. 1, 2010) (adding 740 ILCS 21/1 *et seq.*).  Under the Act, "stalking" specifically means "engaging in a course of conduct directed at a specific person," where the respondent "knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety or the safety of a third person or suffer emotional distress."  740 ILCS 21/10 (West 2022). A "course of conduct" requires the showing of "2 or more acts." *Id.*  In addition to surveillance, examples of stalking include appearing at the person's home and sending unwanted emails or electronic communications. 740 ILCS 21/5 (West 2022).  The term "contact" is "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued." 740 ILCS 21/10 (West 2022).

¶ 13    When a victim seeks a protective order under the Act, he bears the burden of proving by a preponderance of the evidence that the conduct constitutes stalking. 740 ILCS 21/30 (West 2022). A trial court's determination that a preponderance of the evidence shows a violation (or no violation) of the Act will not be overturned unless such a determination is against the manifest weight of the evidence. See *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 22. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.*; see also *Harris Trust & Savings Bank v. Village of Barrington Hills*, 133 Ill. 2d 146, 156-57 (1989).

¶ 14    Here, the trial court's determination denying a stalking no contact order was not against the manifest weight of the evidence.  As noted above, Hendricks was required to establish at least two instances where Biestek had engaged in an act of stalking.  At most, he only established one—

the videotaping incident. The other two incidents that Hendricks listed in his petition were not the type that the Act addresses. They also occurred before Hendricks told Biestek that he wanted Biestek to leave him alone. The first incident allegedly involved a prolonged bit of staring. The other incident involved an awkward conversation. Although these incidents clearly caused Hendricks discomfort, they did not involve the type of actions that Biestek should have known "would cause a reasonable person to fear for his *** safety *** or suffer emotional distress." 740 ILCS 21/10 (West 2022). We therefore agree with the trial court's assessment that Biestek's conduct did not rise to the level that warranted a stalking no contact order.

¶ 15    Our determination is bolstered by other cases that have affirmed the trial court's issuance of a stalking no contact order, as all those cases involved significantly more egregious facts than are present here. See *Coutant v. Durell*, 2021 IL App (3d) 210255, ¶ 78 (over a two-hour period, respondent delivered 27 text messages, made multiple phone calls, and left six voicemail messages; vast majority of those communications were of vulgar and insulting nature and contained "threats of violence or intimidation"); *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶¶ 3-4 (respondent surveilled the petitioner at her workplace and recorded her actions on a cell phone, harassed her on social media, and made a threat against her); *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 5 (patient engaged in a nearly five-year-long pattern of unsolicited contact with his former therapist through e-mail, phone calls, and appearing on therapist's doorstep and trying to talk to her); *Nicholson*, 2013 IL App (3d) 110517, ¶ 5 (respondent installed a hidden camera at office that allowed him to follow petitioner's movements around her desk and their office).

¶ 16    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 17    Affirmed.