2026 IL App (1st) 250657

No. 1-25-0657

Opinion filed June 12, 2026

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JORGE LUIS CORTES-YEPEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 OP 82122 |
| | ) | |
| GERARDO AVELAR, | ) | The Honorable |
| | ) | Joseph M. Gump, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2024, petitioner Jorge Luis Cortes-Yepez filed a petition seeking a stalking no contact order (SNCO) against his then-coworker, respondent Gerardo Avelar, due to alleged stalking behavior committed in their workplace. The trial court entered an emergency SNCO prohibiting respondent from committing acts of stalking, having any contact with petitioner, and knowingly coming within 100 feet of petitioner's residence and then-place of employment. Subsequently, the trial court terminated the emergency order and declined to grant a plenary SNCO because petitioner and respondent no longer worked together.

¶ 2        On appeal, petitioner argues that the trial court erred in refusing to issue the plenary order because it found that respondent had engaged in stalking behavior against him, and the Stalking No Contact Order Act (Stalking Act) (740 ILCS 21/1 *et seq.* (West 2024)) mandates the court to issue an SNCO in such a circumstance. For the following reasons, we reverse the trial court's determination and direct it to issue the plenary SNCO.

¶ 3                                     I. BACKGROUND

¶ 4        On December 17, 2024, petitioner filed a *pro se* petition for an emergency SNCO against respondent, alleging respondent committed multiple incidents of stalking behavior against him in late 2024. Petitioner alleged that in September 2024, he began working in a restaurant where respondent was employed. According to petitioner, respondent engaged in violent and harassing behavior directed at petitioner due to his sexual orientation, including "homophobic comments and aggressive physical touches." On October 3, 2024, respondent allegedly "called for" petitioner and hit his face with a clam, splitting petitioner's upper lip. On October 15, 2024, respondent allegedly placed a plastic bag over petitioner's head to "cut off [his] oxygen," and stated "[t]his is how I'm going to kill you, because this is how you kill faggots." On November 7, 2024, respondent allegedly punched petitioner "on the penis." After this incident, petitioner spoke with human resources. On November 11, 2024, respondent allegedly again placed a plastic bag over petitioner's head to "cut off [his] oxygen." Petitioner requested that respondent be prohibited from stalking contact, having any contact with petitioner, and prohibited from coming near petitioner's residence and workplace.

¶ 5        That day, the court entered an emergency SNCO against respondent, prohibiting him from threatening or committing acts of stalking, having any contact with petitioner, and knowingly coming within 100 feet of petitioner's residence and place of employment. The court also ordered

"no contact by any means." It found that respondent had engaged in "multiple acts of physical abuse directed at [p]etitioner, with specific threats to kill [p]etitioner."

¶ 6        The matter proceeded to a plenary hearing on March 11, 2025, which respondent attended and was represented by counsel. A Spanish interpreter was present via Zoom. During the hearing, petitioner testified that on October 3, 2024, he was working in the kitchen with respondent. Respondent "called" him, and when petitioner turned, respondent threw a piece of clam which hit his lip. Petitioner told respondent that he was being "aggressive," and respondent mocked him by using a feminine voice and making homophobic jokes because petitioner was gay. The court asked petitioner whether they still worked together, and petitioner stated that he no longer worked at the restaurant as of December 31, 2024. Petitioner also stated that he had no contact with respondent since he stopped his employment and had never had contact with him outside his workplace.

¶ 7        Petitioner reported respondent to the police after he asphyxiated him with the plastic bag. The police investigated and told petitioner that, first, he needed to obtain an order of protection against respondent. Petitioner then decided to file the petition for the SNCO. Respondent told the court that he did not know where petitioner lived, but petitioner testified that respondent was the son of a co-owner of the restaurant, so his family had petitioner's personal information.

¶ 8        The court noted that respondent had been assaulted four separate times at his place of employment, but he no longer worked there. It concluded that petitioner no longer needed the SNCO. Petitioner told the court that he continued to be "pretty afraid" of respondent, because respondent's actions affected him physically and emotionally. Petitioner stated that he had "a letter from the restaurant saying and describing the actions and what [respondent] did against" him. He also had surveillance video showing respondent's actions with "the other cooks just laughing." The letter was written by respondent's father, who stated that the restaurant fired respondent due

to the acts. Soon after, the restaurant gradually took days from petitioner, which resulted in him losing his job.

¶ 9   The court stated it took petitioner on his "word" and believed his testimony. Respondent, who was 20 years old, also no longer worked at the restaurant, which had since closed. Respondent testified through an interpreter:

> "I just want to say thank you, your Honor, and I know I am not a saint and I know I have done things in my life that I am not proud of. But one thing I am not is the type of man that's [*sic*] trying to portray me to be. I fight every day to be a better man. I know the whole world knows the type of man that I am and that I fight to be; but it hurts that if I accept this restriction order, I am accepting under the eyes of the law that I am that type of man and I am not. I am not the type of man he makes me seem to be."

¶ 10   The court commented that it recognized that petitioner's allegations were "serious," "outrageous," and "despicable," but they only happened during his employment. It repeated that it saw no "need" to enter the SNCO. It addressed respondent directly and told him that he "not only harmed" petitioner but also his father. It told respondent that he had "some growing up to do," and commented that "the behavior exhibited here is not how you handle this situation." The court asked respondent not to have any contact with petitioner and stated that it did not "see why [he] would." It stated that because "you don't work together anymore, you are not going to see each other," denied the SNCO, and terminated the emergency SNCO, which, according to the court, was properly entered but no longer applicable. It told petitioner that "the only reason" it was not granting the SNCO was because he and respondent no longer worked together. It asserted that, if necessary, petitioner should file another petition, and police should investigate and prosecute the

criminal allegations. The written order noted that the SNCO was denied "due to insufficient evidence" clarifying that petitioner and respondent no longer worked together.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, petitioner argues that the court erred as a matter of law by refusing to issue an order of protection. He contends that the court made a factual determination that respondent engaged in stalking behavior against petitioner and, accordingly, the Stalking Act mandated that an SNCO be issued. Petitioner argues that such an issuance was also necessary to fulfill the purpose of the Stalking Act, which was to keep petitioner safe from respondent's pattern of violent and threatening behavior toward him.

¶ 13        On November 13, 2025, this court entered an order taking the case on the record and petitioner's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 14                          A. The Stalking No Contact Order Act

¶ 15        At the outset, petitioner's argument requires this court to construe the relevant statute and, specifically, whether language of the statute mandates a court to issue an order of protection where it finds that stalking behavior has occurred.

¶ 16        We review claims of statutory interpretation *de novo*. *People v. Tolbert*, 2016 IL 117846, ¶ 12. This court's primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). The most reliable indicator of the intent of the legislature is the language of the statute, given its plain and ordinary meaning. *People v. Minnis*, 2016 IL 119563, ¶ 25. In determining the meaning of statutory language, a reviewing court "may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or

another." *People v. Austin*, 2019 IL 123910, ¶ 96. Where the language is clear and ambiguous, we apply the statute without further aids of statutory construction (*Marshall*, 242 Ill. 2d at 292) and "will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express" (*Sigcho-Lopez v. Illinois State Board of Elections*, 2022 IL 127253, ¶ 27). The court also presumes that the legislature did not intend to create absurd, inconvenient, or unjust results. *Minnis*, 2016 IL 119563, ¶ 25.

¶ 17    Pursuant to section 80(a) of the Stalking Act, "[i]f the court finds that the petitioner has been a victim of stalking, a stalking no contact order shall issue," provided that the petitioner satisfied the other jurisdictional and notice requirements of the Stalking Act with respect to emergency and plenary orders. 740 ILCS 21/80(a) (West 2024).

¶ 18    Petitioner requests that we find that the plain language of the statute imposes a mandatory duty upon the court to issue an SNCO where it finds stalking behavior occurred, rather than granting the court discretion to do so. Generally, the use of "shall" establishes the legislature's intent to impose a mandatory obligation. *People v. Ousley*, 235 Ill. 2d 299, 312 (2009). Therefore, we agree with petitioner that under the language of the statute, given its plain and ordinary meaning, the Stalking Act mandates that a court issue an SNCO if it finds that the petitioner has been a victim of stalking. See *Minnis*, 2016 IL 119563, ¶ 25.

¶ 19    Such an interpretation also comports with the purpose of the Stalking Act: "to provide a remedy for victims who have safety fears or emotional distress as a result of stalking." (Internal quotation marks omitted.) *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 27; 740 ILCS 21/5 (West 2024). The Stalking Act specifies that "[a]ll stalking victims should be able to seek a civil remedy requiring the offenders stay away from the victims and third parties." 740 ILCS 21/5 (West 2024). Unlike the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101

*et seq.* (West 2024)), the Stalking Act does not restrict its application due to any relationship between the parties and merely requires that a petitioner establish a course of conduct of stalking behavior. See 740 ILCS 21/5, 15 (West 2024); 750 ILCS 60/201(a) (West 2024) (persons protected by the Domestic Violence Act include those abused by family or household members).

¶ 20 Additionally, the Stalking Act establishes criminal penalties for violation of an SNCO. "Any law enforcement officer may make an arrest without warrant if the officer has probable cause to believe that the person has committed or is committing a violation of an [SNCO]." 740 ILCS 21/130(a) (West 2024). A violation of an SNCO is a Class A misdemeanor for a first violation and a Class 4 felony for all subsequent violations. 720 ILCS 5/12-3.9(e) (West 2024). A violation, thus, carries penalties ranging from less than one year imprisonment (730 ILCS 5/5-4.5-55(a) (West 2024) (Class A misdemeanors)) to one to three years' imprisonment (*id.* § 5-4.5-45(a) (Class 4 felonies)), depending on the existence of prior violations.

¶ 21 This is analogous to the Domestic Violence Act, which exists, *inter alia*, to provide victims of domestic violence with civil and criminal remedies to prevent further abuse. See 750 ILCS 60/102 (West 2024). In interpreting the Domestic Violence Act, we have found that the same "shall issue" language mandated the court to issue an order of protection where the court found evidence of abuse. *Sanchez v. Torres*, 2016 IL App (1st) 151189, ¶ 22. Additionally, we commented that the criminal penalties associated with a violation of an order of protection enable law enforcement officers to easily act to prevent future abuse and "affords an accessible *pro se* process that victims can navigate more easily and affordably." *Id.* ¶ 23.

¶ 22 Here, petitioner asserted that he attempted to take criminal action against respondent, but the police advised him to obtain an order of protection first. Petitioner also testified that he was afraid of respondent. The court's denial of the plenary SNCO, therefore, forestalled petitioner's

ability to take quick, easy action against any further acts of stalking. By telling petitioner to file another petition if further stalking behavior occurred, the court ignored the purpose of the Stalking Act: "to provide a remedy for victims who have safety fears or emotional distress as a result of stalking." (Internal quotation marks omitted.) *Flood*, 2019 IL App (1st) 172792, ¶ 27. Again, the Stalking Act does not give a court the discretion not to issue the SNCO where it finds that stalking behavior occurred. 740 ILCS 21/80(a) (West 2024).

¶ 23       In sum, we find that a court is required to issue an SNCO where a petitioner makes a sufficient showing that he was the victim of stalking.

¶ 24                B. Whether the Trial Court Erred in Denying the Plenary Protective Order

¶ 25       Here, the court denied the petition for a plenary SNCO and terminated petitioner's emergency SNCO solely because the parties no longer worked together. It noted in its written order that it denied the order due to "insufficient evidence." During the hearing, however, the court stated that it believed petitioner's allegations regarding respondent's behavior.

¶ 26       The Stalking Act defines "stalking" as "engaging in a course of conduct directed at a specific person" that "would cause a reasonable person to fear for his or her safety *** or suffer emotional distress." *Id.* § 10. A "course of conduct" under the Stalking Act is "2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties *** follows, monitors, observes, surveils, or threatens a person." *Id.* "Contact" is defined as "any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued." *Id.*

¶ 27       A petitioner is required to prove stalking by a preponderance of the evidence. *Id.* § 30(a); *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 10. The trial court's decision will not be overturned unless it is against the manifest weight of the evidence. *McNally*, 2015 IL App (1st)

134048, ¶ 12. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *Id.*

¶ 28        Here, it is undisputed that the acts described by petitioner establish a course of conduct where respondent threatened petitioner's safety and emotional well-being. Therefore, petitioner would be entitled to a plenary SNCO if he proved the stalking by a preponderance of the evidence. See *id.* ¶ 10. The court made no official finding regarding whether the petitioner proved the allegations by a preponderance of the evidence. However, the court commented during its ruling that it believed the incidents occurred. Further, respondent did not directly refute or deny the allegations made against him. The definition of a preponderance of the evidence is "[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *Board of Education of Chicago v. Johnson*, 211 Ill. App. 3d 359, 364 (1991) (Internal quotation marks omitted.); *In re Aniylah B.*, 2016 IL App (1st) 153662, ¶ 41. Although it did not specify so, the court essentially found that petitioner met his burden in establishing that stalking behavior occurred. Given our review of the record, the court's finding of stalking was not against the manifest weight of the evidence.

¶ 29        The court nevertheless denied the plenary SNCO solely because petitioner and respondent no longer worked together. It considered the SNCO to be no longer applicable due to this fact. As established above, this ruling was erroneous because the Stalking Act does not grant a court the discretion to deny an SNCO after determining that stalking occurred. See 740 ILCS 21/80(a) (West 2024). The purpose of the Stalking Act is to provide a remedy for victims of stalking behavior. *Flood*, 2019 IL App (1st) 172792, ¶ 27. Petitioner is a victim of stalking behavior. Although the likelihood that petitioner and respondent would interact again is "much more remote," we cannot

say that such a likelihood is impossible. See *Hendricks v. Biestek*, 2024 IL App (2d) 230008-U, ¶¶ 9-10 (declining to dismiss an appeal from the denial of an SNCO as moot where the petitioner moved from the neighborhood where respondent lived).

¶ 30 Because the trial court erred in denying the plenary SNCO, we reverse and remand for entry of a two-year plenary SNCO.

¶ 31 Reversed and remanded.

---

***Cortes-Yepez v. Avelar*, 2026 IL App (1st) 250657**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-OP-82122; the Hon. Joseph M. Gump, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joshua B. Concannon, of Dentons US LLP, and Benna Crawford and William Jordan Crider, of Legal Aid Chicago, both of Chicago, Shari L. Klevens and Shalin N. Shah, of Dentons US LLP, of Washington D.C., and Sean M. Kirwin, of Dentons US LLP, of Atlanta, Georgia, and, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellee. |

---